IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| MAXINE PHILLIPS, Individually and on Behalf of All Others Similarly Situated, | ) ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | |
| TEXAS INDUSTRIES, INC., THOMAS R. RANSDELL, MEL G. BREKHUS, JOHN D. BAKER II, EUGENIO CLARIOND, SAM COATS, SEAN P. FOLEY, BERNARD LANIGAN, JR., THOMAS L. RYAN, RONALD G. STEINHART, DOROTHY C. WEAVER, MARTIN MARIETTA MATERIALS, INC., and PROJECT HOLDINGS, INC., | ) ) ) ) ) ) ) ) ) ) | Case No. 3:14-cv-00740-B |
| Defendants. | ) ) ) ) ) | |

**PLAINTIFF'S MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF'S
UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF SETTLEMENT**

## <u>TABLE OF CONTENTS</u>

I.  INTRODUCTION ........................................................................................... 1

II. BACKGROUND OF THE LITIGATION ..................................................... 3

III. THE SETTLEMENT TERMS ..................................................................... 6

IV. THE PROPOSED SETTLEMENT SHOULD BE PRELIMINARILY APPROVED............ 8

    A. The Role of the Court.................................................................................. 8

    B. The Proposed Settlement is Reasonable .................................................. 9

    C. The Proposed Class May Be Certified .................................................. 12

        1.  The Proposed Class Satisfies Rule 23(a) .......................................... 12

            a.  The Numerosity Requirement Is Satisfied ................................... 12

            b.  The Commonality Requirement Is Satisfied ................................ 12

            c.  The Typicality Requirement Is Satisfied..................................... 13

            d.  The Adequacy Requirement Is Satisfied..................................... 13

        2.  The Proposed Settlement Satisfies Rule 23(b)................................... 14

    D. The Proposed Plan of Class Notice........................................................ 16

    E. Proposed Schedule of Events................................................................. 17

V. CONCLUSION ........................................................................................... 18

# TABLE OF AUTHORITIES

**Cases**

*Ayers v. Thompson*,
   358 F.3d 356 (5th Cir. 2004) .................................................................... 9

*Berger v. Compaq Computer Corp.*, 257 F.3d 475, 479 (5th Cir. 2001) ......................... 14

*Castano v. American Tobacco Co.*,
   84 F.3d 734 (5th Cir. 1996) ..................................................................... 12

*Feder v. Elec. Data Sys. Corp.*, 429 F.3d 125, 130 (5th Cir. Tex. 2005).................... ......14

*Horton v. Goose Creek Independent School Dist.*, 690 F.2d 470 (5th Cir. 1982)..................14

*In re China Intelligent Lighting & Elecs., Inc. Secs. Litig.*,
   No.: CV 11-2768 PSG (SSx), 2013 U.S. Dist. LEXIS 155091 (C.D. Cal. Oct. 25, 2013) ...... 15

*In re Nationwide Fin. Servs. Litig.*,
   No.: 2:08-CV-00249, 2009 U.S. Dist. LEXIS 136962 (S.D. Ohio Aug. 18, 2009) ................ 15

*In re Nissan Motor Corp. Antitrust Litig.*,
   552 F.2d 1088 (5th Cir. 1977) ................................................................. 17

*Langbecker v. Elec. Data Sys. Corp.*,
   476 F.3d 299 (5th Cir. 2007) ................................................................. 16

*Lightbourn v. Cnty. of El Paso*,
   118 F.3d 421 (5th Cir. 1997) ................................................................. 13

*Lohocky v. Tidel Techs., Inc.*,
   220 F.R.D. 491 (S.D. Tex. 2004)............................................................... 13

*McNamara v. Bre-X Minerals Ltd.*,
   214 F.R.D. 424 (E.D. Tex. 2002) .......................................................... 9, 12

*Mills v. Elec. Auto-Lite Co.*,
   396 U.S. 375 (1970).......................................................................... 11

*Mullen v. Treasure Chest Casino LLC*,
   186 F.3d 620 (5th Cir. 1999) ................................................................. 12

*Parker v. Anderson*,
   667 F.2d 1204 (5th Cir. 1982) ................................................................. 9

*Pettway v. American Cast Iron Pipe Co.*,
   576 F.2d 1157 (5th Cir. 1978) ............................................................... 10

*Rodriguez v. Countrywide Home Loans, Inc.*,
   695 F.3d 360 (5th Cir. 2012) ................................................................. 16

*Smith v. Crystian*,
   91 F. App'x 952 (5th Cir. 2004) .......................................................... 9, 10

*Stott v. Capital Fin. Servs.*,
   277 F.R.D. 316 (N.D. Tex. 2011).............................................................. 12

*Unger v. Amedisys, Inc.*,
   401 F.3d 316 (5th Cir. 2005) ................................................................ 14

*Wal-Mart Stores, Inc. v. Dukes*,
   131 S. Ct. 2541 (2011) ........................................................................ 15

*Wolf v. Frank*,
   477 F.2d 467 (5th Cir. 1973) ............................................................... 11

**Other Authorities**

*Manual for Complex Litigation, Fourth*
   § 13.14 (2010) ........................................................................... 9, 12, 17

**Rules**

Fed. R. Civ. P. 23 .......................................................................... passim

## I.   INTRODUCTION

Pursuant to Fed. R. Civ. P. 23(a), 23(b)(1), 23(b)(2), and 23(e), plaintiff Maxine Phillips ("Plaintiff"), on behalf of herself and the members of the Class (defined herein), respectfully request that the Court grant preliminary approval of the proposed settlement of this class action litigation (the "Action") against defendants Thomas R. Ransdell, Mel G. Brekhus, John D. Baker II, Eugenio Clariond, Sam Coats, Sean P. Foley, Bernard Lanigan, Jr., Thomas L. Ryan, Ronald G. Steinhart, Dorothy C. Weaver (the "Individual Defendants" or the "Board", and, collectively with Texas Industries, Inc. ("TXI"), Martin Marietta Materials, Inc. and Project Holdings, Inc., the "Defendants").   Specifically, Plaintiff seeks entry of the [Proposed] Order Preliminarily Approving Settlement and Providing Notice (the "Preliminary Order")[1] that will: (i) preliminarily approve the settlement set forth in the Stipulation of Settlement dated January 22, 2015 (the "Stipulation" or "Settlement")[2]; (ii) preliminarily certify, for settlement purposes only, a non-opt-out class consisting of Plaintiff and any and all persons or entities who held shares(s) of TXI common stock. either or record or beneficially, at any time between March 25, 2013, and July 1, 2014, the date of consummation of the acquisition transaction with Martin Marietta Materials, Inc. and Project Holdings, Inc. ("Martin Marietta) including any and all of their respective successors-in-interest, predecessors, representatives, trustees, executors, administrators, heirs, assigns, or transferees, immediate and remote, and any person or entity acting for or on behalf of, or claiming under, any of them, other than the Defendants, their subsidiary companies, affiliates, assigns and members of their immediate families, as the case may be (the "Class"); (iii) approve as to form and content the Notice Pendency of Class Action,

---

[1]      A copy of the Preliminary Order is attached as Exhibit B to the Stipulation.

[2]      A copy of the Stipulation is attached as Exhibit1 to the Declaration of Balon B. Bradley in Support of Plaintiff's Unopposed Motion for Preliminary Approval of Settlement ("Bradley Decl.") filed herewith.

Proposed Settlement of Class Action and Settlement Hearing (the "Notice")[3] and order the direct mailing of the Notice; and (iv) schedule a hearing (the "Settlement Hearing") at which the Court will consider final approval of the Settlement.[4]

The proposed Class satisfies the requirements of Rule 23(a) in that "(1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law and fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(1)-(4). The proposed Class: (1) may be maintained under Rule 23(b)(1)(A) because the prosecution of separate actions by individual members of the Class would create a risk of inconsistent or varying adjudications with respect to individual members of the Class, which would establish incompatible standards of conduct for Defendants; (2) may be maintained under Rule 23(b)(1)(B) because adjudications with respect to individual members of the Class would, as a practical matter, be dispositive of the interests of the other members not parties to the individual adjudications or would substantially impair or impede their ability to protect their interests; and (3) may be maintained under Rule 23(b)(2) because Defendants are alleged to have acted on grounds that apply generally to the Class, and final injunctive or declaratory relief is appropriate with respect to the Class as a whole. The proposed Settlement is fair, reasonable, and adequate. Fed. R. Civ. P. 23(e)(2).

The proposed form of Notice adequately informs the Class members of (1) the terms and conditions of the Settlement, (2) the date of the Settlement Hearing; and (3) Class members'

---

[3]    A copy of the Notice is attached as Exhibit C to the Stipulation. The [Proposed] Order and Final Judgment is attached as Exhibit D to the Stipulation.

[4]    Although this Motion is unopposed, this Memorandum of Law is submitted solely by Plaintiff and does not in all instances represent the views of Defendants.

right to object to the Settlement and to be heard at the Settlement Hearing.  The Notice will be mailed to the last known address of each reasonably identifiable member of the Class by U.S. Mail, postage pre-paid, in accordance with the Preliminary Order.  Thus, the form and method of Notice is reasonable.

As such, Plaintiff and her respective counsel (together "Counsel")[5] believe that the Settlement is in the best interests of the Class and respectfully request that the Court preliminarily approve the Settlement and enter the Preliminary Order as submitted.

## II.      BACKGROUND OF THE LITIGATION

On January 28, 2014, TXI and Martin Marietta announced that their respective boards of directors had unanimously approved an agreement and plan of merger pursuant to which Martin Marietta would acquire TXI by way of a merger in which holders of TXI common stock would receive 0.700 Martin Marietta shares for each share of TXI common stock.

On February 25, 2014, the Action was filed, alleging that the Director Defendants breached their fiduciary duties to TXI's stockholders in connection with the Transaction and that TXI and Martin Marietta aided and abetted those breaches, and seeking, among other things, an order enjoining the Transaction.

On March 3, 2014, Martin Marietta filed a Form S-4 registration statement containing a preliminary joint proxy statement/prospectus with the SEC.

On March 18, 2014, the Plaintiff filed the Amended Complaint, which added additional claims alleging material omissions in the Preliminary Proxy Statement/Prospectus.

---

[5]      Counsel is Faruqi & Faruqi, LLP (the "Faruqi Firm").

On April 19, 2014, the Plaintiff sought expedited discovery from Defendants, and following discussions, the Defendants ultimately agreed to provide certain expedited discovery to the Plaintiff.

On May 1, 2014, Martin Marietta filed an amended Form S-4 registration statement containing a preliminary joint proxy statement/prospectus with the SEC containing certain additional disclosures.

On May 21, 2014, Martin Marietta filed a second amended Form S-4 registration statement containing a preliminary joint proxy statement/prospectus with the SEC containing, among other things, certain additional disclosures.

On May 30, 2014, Martin Marietta and TXI filed a definitive joint proxy statement in connection with the Merger on Form 424B3 and Schedule 14A, respectively, with the Securities and Exchange Commission containing, among other things, certain additional disclosures sought by Plaintiff.

Defendants and Plaintiff thereafter engaged in arm's-length discussions and negotiations regarding a potential resolution of the claims asserted in the Action.  In connection with such discussions and negotiations, Plaintiff proposed to Defendants various additional disclosures and potential amendments to the Merger Agreement that Plaintiff believed should have been made originally in connection with the proposed transaction.  Following arm's-length negotiations, Defendants agreed, in order to settle the Action, to provide the Supplemental Disclosures.

On June 10, 2014, the Parties reached an agreement in principle, the substantive terms of which were memorialized in the MOU, providing for settlement of the Action, subject to confirmatory discovery that has now been completed.

On June 11, 2014, in accordance with the MOU, Defendants filed with the SEC the Supplemental Disclosures.  Without in any way admitting or conceding that any additional disclosures are or may have been material or required, Defendants acknowledge that the filing of the Action and negotiations with Plaintiff in connection with a potential settlement of the Action were the sole cause of the Supplemental Disclosures.

At a special meeting of the stockholders of TXI and Martin Marietta to vote on the Transaction and approve the Merger Agreement on June 30, 2014 a requisite number of TXI and Martin Marietta stockholders voted to approve the Transaction and the Merger Agreement.

Defendants have vigorously denied and continue to deny all allegations of wrongdoing, fault, liability, or damage to Plaintiff, deny that they have engaged in any wrongdoing whatsoever, deny that they have committed any violation of law, deny that they have breached any fiduciary duty, deny that any disclosures in connection with the proposed transaction (including without limitation those in the Form S-4, Form S-4/A, Form 424B3, and Schedule 14A) are or at any time have been in any way deficient, deny that they acted improperly in any way, believe that they acted properly at all times, believe that the Action has no merit, and maintain that they have committed no disclosure violations or any other breach of duty whatsoever in connection with the Transaction or any public disclosures relating thereto, but have determined to enter into a settlement.

Plaintiff determined to enter into the MOU because, in her opinion, the Supplemental Disclosures provided additional material information about the sale process, though entry by Plaintiff into the MOU was not an admission by her as to the lack of any merit of any claims asserted in the Action.  The Parties also recognized the time and expense that would be incurred by further litigation and the uncertainties inherent in such litigation.

Plaintiff conducted confirmatory discovery that included the review of additional paper discovery, including board minutes for TXI, regarding the proposed transaction as well as an in-depth interview of the Chairman of the Board, Defendant Thomas R. Ransdell ("Ransdell"), in the presence of counsel for Defendants.

After completing confirmatory discovery, the Parties confirmed their agreement for settlement of the Action on the terms and conditions set forth in the MOU and the Stipulation, including but not limited to, a release of all claims relating to the proposed transaction or which were or could have been asserted in the Action.

Throughout the litigation, Counsel conducted a thorough investigation into the facts and law relating to the Action.  After fully analyzing the merits of all parties' contentions, including the impact of the proposed Settlement on Plaintiff and the absent Class members, Plaintiff and Counsel entered into the Stipulation providing for the Settlement described below.  Importantly, during the negotiations, all parties had a clear view of the strengths and weaknesses of their respective claims and defenses, and the Settlement is the product of arm's-length negotiations between the parties, who were all represented by counsel with extensive experience and expertise in shareholder litigation.

## III.    THE SETTLEMENT TERMS

The Settlement required TXI to disclose certain information to members of the Class that Plaintiff believed was material and critical to TXI shareholders' ability to make a fully informed decision regarding whether to vote for, or against, the Proposed Transaction.

The Supplemental Disclosures, which were set forth in a Form 8-K filed by TXI with the SEC on June 11, 2014, provided information to TXI shareholders in advance of the shareholder vote concerning, in part, the following:

(1)    Supplements to the "Opinion of TXI's Financial Advisor—Selected Public Companies Analysis" as follows:

Citigroup reviewed, among other things, the enterprise values of the selected companies, TXI and Martin Marietta, calculated as equity value (based on closing stock prices on January 24, 2014) plus debt and minority interests, less cash, as a multiple of estimated calendar years 2013 and 2014 EBITDA.

| Global Producers | Enterprise Value / 2013E EBITDA | Enterprise Value / 2014E EBITDA |
|---|---|---|
| ☐ Holcim Ltd. | 8.6x | 7.6x |
| ☐ Lafarge SA | 8.9 | 7.7 |
| ☐ CRH PLC | 12.5 | 10.6 |
| ☐ HeidelbergCement AG | 8.0 | 7.4 |
| ☐ Cemex, S.A.B. de C.V. | 12.3 | 10.9 |

| U.S. Producers | Enterprise Value / 2013E EBITDA | Enterprise Value / 2014E EBITDA |
|---|---|---|
| ☐ Vulcan Materials Company | 22.1x | 17.3x |
| ☐ Eagle Materials Inc. | 17.1 | 11.6 |

Based on its professional judgment and taking into consideration the observed multiples for the selected companies, Citigroup then applied ranges of selected multiples to estimated calendar year 2014 EBITDA for TXI and Martin Marietta of 11.5x-12.6x and 12.0x-13.5x, respectively.

(2)    Supplements to the "Opinion of TXI's Financial Advisor—Discounted Cash Flow Analysis" as follows:

TXI's net operating loss carry forwards were valued separately in the context of a standalone company at approximately $3.75 per share (which is not reflected in the reference range provided below with respect to the discounted cash flow analyses because such value did not take into consideration any potential limitation due to a change of control), and stock-based compensation was treated as a cash expense for both TXI and Martin Marietta.  Proceeds from any potential sale of real estate were not incorporated into the analysis.

Based on TXI management estimates, Citigroup used an estimated mid-cycle EBITDA terminal value for TXI of $418 million, and based on Martin Marietta management estimates, Citigroup used an estimated mid-cycle EBITDA terminal value for Martin Marietta of $700 million.  The implied mid-cycle terminal unlevered free cash flows derived from the analysis for TXI and Martin Marietta were $248 million and $321 million, respectively.  The range of implied terminal perpetuity growth rates derived from the analysis for TXI and Martin Marietta were 0.2% to 3.7% and 2.9% to 5.7%, respectively.

(3)     Supplements to the "Opinion of TXI's Financial Advisor—Contribution Analysis" as follows:

The proportions of contribution from TXI and Martin Marietta based on this analysis are below:

|  | Contribution | | |
|---|---|---|---|
|  | **MLM** | **TXI** | **Combined** |
| **Equity Value** | 74% | 26% | 100.0% |
| **Enterprise Value** | 72% | 28% | 100.0% |
| **CY Net Revenue** | | | |
| 2013E | 71% | 29% | 100.0% |
| 2014E | 69% | 31% | 100.0% |
| 2015E | 69% | 31% | 100.0% |
| **CY EBITDA** | | | |
| 2013E | 79% | 21% | 100.0% |
| 2014E | 71% | 29% | 100.0% |
| 2015E | 69% | 31% | 100.0% |
| **CY EBIT** | | | |
| 2013E | 87% | 13% | 100.0% |
| 2014E | 74% | 26% | 100.0% |
| 2015E | 70% | 30% | 100.0% |
| **CY Net Income** | | | |
| 2013E | - | - | - |
| 2014E | 85% | 15% | 100.0% |
| 2015E | 72% | 28% | 100.0% |

The Stipulation provides that, if the Court approves the Settlement, and in consideration of the Supplemental Disclosures, Plaintiff, on behalf of the Class, agrees to release all claims asserted against Defendants in the Action or in any action, proceeding, or shareholder demand involving the facts and circumstances that gave rise to the Action.

## IV.   THE PROPOSED SETTLEMENT SHOULD BE PRELIMINARILY APPROVED

### A.  The Role of the Court

Rule 23(e) of the Federal Rules of Civil Procedure requires judicial approval for any compromise of claims brought on a classwide basis.  Initially, the Fifth Circuit recognizes a

"strong judicial policy favoring the resolution of disputes through settlement." *Smith v. Crystian*, 91 F. App'x 952, 955 (5th Cir. 2004) (citing *Parker v. Anderson*, 667 F.2d 1204, 1209 (5th Cir. 1982)).  As such, approval of the proposed settlement is left to the discretion of the Court.  *Ayers v. Thompson*, 358 F.3d 356, 368 (5th Cir. 2004).  "Approval of a class action settlement involves a two-step process.  First, the Court makes a preliminary fairness evaluation of the proposed terms of settlement submitted by counsel." *McNamara v. Bre-X Minerals Ltd.*, 214 F.R.D. 424, 426 (E.D. Tex. 2002); *see also Manual for Complex Litigation, Fourth* ("Manual 4th") § 13.14 (2004).  "Second, if the Court determines that the settlement is fair, the Court directs that notice pursuant to Rule 23(e) be given to the class members of a formal fairness hearing, at which arguments and evidence may be presented in support of and in opposition to the settlement." *Id.*; *see also* Manual 4th § 13.14 (2004).

### B.  The Proposed Settlement is Reasonable

Prior to granting preliminary approval of the Settlement, the Court must first determine whether the Settlement is fair, adequate, and reasonable.  To determine whether the Settlement is reasonable, the Court considers six factors, including:

> (1) whether the settlement was a product of fraud or collusion; (2) the complexity, expense, and likely duration of the litigation; (3) the stage of the proceedings and the amount of discovery completed; (4) the factual and legal obstacles [to] prevailing on the merits; (5) the possible range of recovery and the certainty of damages; and (6) the respective opinions of the participants, including class counsel, class representative, and the absent class members.

*Smith*, 91 F. App'x at 955 n.3 (5th Cir. 2004) (citing *Pettway v. American Cast Iron Pipe Co.*, 576 F.2d 1157 (5th Cir. 1978)).  In other words, preliminary approval should be granted where, as here, the settlement appears sufficiently reasonable and offers the Class members opportunity to object.  Here, all considerations support preliminary approval of the Settlement.

From initiation of this litigation, Plaintiff vigorously pursued this case and sought discovery in an expedited manner to cure material omissions in the Preliminary Proxy. Counsel and Defendants' Counsel were able to agree on robust discovery to explore Plaintiff' concerns regarding the Proposed Transaction, prior to TXI holding a special meeting of its shareholders to vote on the Proposed Transaction. For example, Plaintiff, through the efforts of Counsel (who have extensive experience in litigation of this nature),[6] sought and received core documents critical to evaluating the fairness of the consideration offered in the Proposed Transaction and the material omissions in the Preliminary Proxy, including: TXI Board minutes and presentations to the TXI Board by Citigroup, relating to the Proposed Transaction. Following the production of these documents, Counsel worked extensively with their financial expert, who has extensive experience in valuing companies like TXI, to evaluate the consideration to be received by TXI shareholders and to identify material omissions in the Preliminary Proxy to be cured before the June 30, 2014 vote of TXI shareholders. Also, Counsel conducted an in-depth interview of the Chairman of the Board, Ransdell, in the presents of counsel for the Defendants.

During the course of discovery, Plaintiff was able to fully ascertain the strengths and weaknesses of her claims. For example, only following confirmatory discovery and further consultation with Plaintiff's financial expert, did Plaintiff conclude that demonstrating that the offering price fell outside a range of fairness would be a very difficult proposition. Plaintiff assured herself that the process undertaken by the Individual Defendants to sell the Company and how the Individual Defendants valued the Company was satisfactory. Plaintiff, only after full evaluation of the strengths and weaknesses of her claims, arrived at the belief that the case favors Settlement.

---

[6]     A copy of the Faruqi Firm's firm resume is attached as Exhibit 2 to the Bradley Decl.

Further ensuring that the settlement negotiations were extensive and adversarial, Plaintiff's Counsel and Defendants' Counsel exchanged proposals and counter-proposals concerning the nature and scope of the Supplemental Disclosures.  Ultimately, Defendants agreed to provide TXI shareholders with more specific information including, *inter alia*, critical assumptions and evaluative decisions made by Citigroup when it analyzed the Proposed Transaction and determined that it was fair.  These disclosures addressed many of the issues raised by Plaintiff in her Class Action Complaint.

At the conclusion of these negotiations, Plaintiff and Counsel unanimously agreed to enter into the Settlement.  The Settlement ensured that TXI shareholders were given the material information necessary for them to make a fully informed decision about whether to vote for or against the Proposed Transaction.  *See Wolf v. Frank*, 477 F.2d 467, 480 (5th Cir. 1973) (citing *Mills v. Elec. Auto-Lite Co.*, 396 U.S. 375, 395-96 (1970)) (internal citations omitted) (observed that "an increasing number of lower courts have acknowledged that a corporation may receive a 'substantial benefit' from a [shareholders' action] . . .." and that "regardless of the relief granted, private stockholders' actions of this sort 'involve corporate therapeutics,' and furnish a benefit to all shareholders by providing an important means of enforcement of the proxy statute.").

Plaintiff submits that the proposed Settlement is fair and in the best interests of all shareholders, meets all indicia of fairness and merits the Court's preliminary approval.  Accordingly, Plaintiff respectfully requests that the Court preliminarily approve the Settlement and enter the Preliminary Order as submitted.[7]

---

[7]     If preliminary approval is granted, Class members will receive formal notice of the settlement and be given an opportunity to lodge any objections.

### C.  The Proposed Class May Be Certified

Prior to granting preliminary approval of a settlement, the Court should first determine whether the proposed Class is a proper class for settlement purposes.  *See McNamara*, 214 F.R.D. at 426-27; *see also* Manual 4th § 21.632 (2004).  The Court has broad discretion within the framework of Rule 23 in determining whether to certify the proposed Class.  *See Castano v. American Tobacco Co.*, 84 F.3d 734, 740 (5th Cir. 1996).  The Court may certify a class where plaintiff demonstrates that the proposed class and proposed class representatives meet the requirements of Rule 23(a)(1-4) (*i.e.*, numerosity, commonality, typicality, and adequacy of representation).  Fed. R. Civ. P. 23(a)(1)-(4).

#### 1.  The Proposed Class Satisfies Rule 23(a)

##### a.  The Numerosity Requirement Is Satisfied

The class is so numerous that joinder of all members is impracticable.  According to the Company, as of January 2, 2014, approximately 28 million shares were represented by the Company as outstanding.  *See Mullen v. Treasure Chest Casino, L.L.C.*, 186 F.3d 620, 624 (5th Cir. 1999) (finding a class of 100 to 150 members satisfies numerosity and any more than 40 members should raise a presumption that joinder is impracticable).  In addition, the Class members are too geographically dispersed to be easily joined into one action.  *Stott v. Capital Fin. Servs., Inc.*, 277 F.R.D. 316, 324 (N.D. Tex. 2011).  Because there are hundreds if not thousands of TXI shareholders dispersed throughout the United States, the proposed Class satisfies the numerosity requirement under Federal Rules of Civil Procedure 23(a)(1).

##### b.  The Commonality Requirement Is Satisfied

The commonality requirement under Rule 23(a)(2) is met where, as here, "there is at least one issue, the resolution of which will affect all or a significant number of the putative class members."  *Lightbourn v. Cnty. of El Paso*, 118 F.3d 421, 426 (5th Cir. 1997).  Here, issues

common to the Class include, *inter alia*, whether the Individual Defendants breached their fiduciary duties of undivided loyalty, independence, or due care with respect to Plaintiff and the other members of the Class in connection with the Proposed Transaction and whether the Individual Defendants breached their fiduciary duty to secure and obtain the best price reasonably possible under the circumstances for the benefit of Plaintiff and the other Class members in connection with the Proposed Transaction.  As these claims affect the entirety of the Class equally, the proposed Class meets the commonality requirement.

### c.   The Typicality Requirement Is Satisfied

The typicality requirement under Federal Rules of Civil Procedure 23(a)(3) is satisfied because Plaintiff's claims arise from a similar course of conduct and assert the same legal theories as the claims of all Class members.  *See Lohocky v. Tidel Techs., Inc.*, 220 F.R.D. 491, 500 (S.D. Tex. 2004) (typicality is found where claims raised by plaintiff have "a common source and rest upon the same legal and remedial theories" and "factual differences will not defeat typicality").  Here, the typicality requirement is satisfied by Plaintiff because her claims arise from the same nucleus of operative facts (*i.e.*, the Proposed Transaction between TXI and Martin Marietta).  Thus, Plaintiff's claims are typical of the Class.

### d.   The Adequacy Requirement Is Satisfied

Plaintiff has adequately represented the interests of the proposed Class and has retained counsel qualified to pursue the litigation.  *See Unger v. Amedisys, Inc.*, 401 F.3d 316, 320 (5th Cir. 2005) ("[C]lass representatives, their counsel, and the relationship between the two are adequate to protect the interests of absent class members.").  The "long-established standard" for the adequacy determination requires "'an inquiry into [1] the zeal and competence of the representative['s] counsel and . . . [2] the willingness and ability of the representatives to take an active role in and control the litigation and to protect the interests of absentees[.]'"  *Feder v. Elec.*

*Data Sys. Corp.*, 429 F.3d 125, 130 (5th Cir. Tex. 2005) (citing *Berger v. Compaq Computer Corp.,* 257 F.3d 475, 479 (5th Cir. 2001) (quoting *Horton v. Goose Creek Independent School Dist.*, 690 F.2d 470 (5th Cir. 1982)).

Plaintiff and her Counsel have fairly and adequately represented and protected the interests of all Class members, as demonstrated by the record showing vigorous prosecution of this litigation.  Plaintiff's Counsel is well qualified to zealously litigate on behalf of the proposed Class as they have litigated numerous shareholder class actions throughout the country, including in this jurisdiction.[8]  There are no conflicts of interest between Plaintiff, Counsel, and the Class members because their interests are aligned.  Thus, Plaintiff and her Counsel satisfy the adequacy requirement.

### 2.  The Proposed Settlement Satisfies Rule 23(b)

In addition to meeting all of the requirements of Rule 23(a), the proposed Class also satisfies both Rule 23(b)(1) and (b)(2).  Rule 23(b)(1) authorizes class certification if "prosecuting separate actions by or against individual members would create the risk of: (A) inconsistent or varying adjudications with respect to individual class members that would establish incompatible standards of conduct for the party opposing the class; or (B) adjudications with respect to individual class members that, as a practical matter, would be dispositive of the interests of the other members not parties to the individual adjudications or would substantially impair or impede their ability to protect their interests."  Fed. R. Civ. P. 23(b)(1).  Rule 23(b)(2) authorizes class certification if "the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole."  Fed. R. Civ. P. 23(b)(2).  A

---

[8]        *See* Exhibit 2 to the Bradley Decl.

class certified under Rule 23(b)(1) or (b)(2) is mandatory and members of the settlement class **may not** opt out. *See Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541, 2558 (2011). Because all Class members are shareholders of the Company challenging the same Proposed Transaction between TXI and Martin Marietta, there is a substantial risk of varying or inconsistent results. For example, while one court may permit Defendants to proceed with consummating the Proposed Transaction, another court may issue an injunction enjoining the shareholder vote. Thus, the possibility of conflicting court orders in this litigation shows that the Class satisfies Rule 23(b)(1). *See e.g., In re China Intelligent Lighting & Elecs., Inc. Secs. Litig.*, No.: CV 11-2768 PSG (SSx), 2013 U.S. Dist. LEXIS 155091, at *18 (C.D. Cal. Oct. 25, 2013) ("It would be inefficient to have individual members of the Class—who are likely geographically dispersed, given that CIL was a publicly-traded company—bring separate claims in scattered courts across the country. Such fragmentation would . . . create a risk of inconsistent judgments."); *see also In re Nationwide Fin. Servs. Litig.*, No.: 2:08-CV-00249, 2009 U.S. Dist. LEXIS 126962, at *30 (S.D. Ohio Aug. 18, 2009) ("Here absent class certification, the various Shareholder Actions filed against Defendants could result inconsistent judgments, e.g., regarding whether the transaction should or should not proceed.").

The Court may also certify a class under Rule 23(b)(2) "if the party opposing the class has acted or refused to act on grounds generally applicable to the class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the class as a whole." *Rodriguez v. Countrywide Home Loans, Inc.*, 695 F.3d 360, 365 (5th Cir. 2012). Defendants are alleged to have acted on grounds that are generally applicable to the proposed Class members in that the Proposed Transaction affects all TXI shareholders in the same way. In other words, the relief obtained—dissemination of the Supplemental Disclosures—benefitted all

15

members of the Class equally.  By providing this material information to shareholders, prior to

the shareholder vote—held on June 30, 2014—all TXI shareholders were able to make an

informed decision whether to vote for, or against, the Proposed Transaction.  Accordingly, a

mandatory *non opt-out* class should be certified under Rules 23(b)(1) and (b)(2).

### D.  The Proposed Plan of Class Notice

In general, "[n]either a Rule 23(b)(1) or (2) class action requires notice to class members

or the option to opt-out."  *Langbecker v. Elec. Data Sys. Corp.*, 476 F.3d 299, 306 (5th Cir.

2007).  Rule 23(c)(2)(A) provides, however, that the Court "may direct the appropriate notice" to

a Rule 23(b)(1) or (b)(2) class.

Rule 23(e)(1) requires the Court "to direct notice in a reasonable manner to all class

members who would be bound by the [Settlement] proposal."  Fed. R. Civ. P. 23(e)(1).  Plaintiff

and Defendants propose that the Notice will be mailed to all members of the Class at the last

known address of each reasonably identifiable member of the Class by U.S. Mail, postage pre-

paid, in accordance with the Preliminary Order.  *See* Stipulation at III.C.1.a.  The proposed

method of Notice comports with the requirements of due process.

"The fairness hearing notice should alert the class that the hearing will provide class

members an opportunity to present their views on the proposed settlement and to hear arguments

and evidence for and against the terms."  Manual 4th § 21.633 (2004).  The notice "should tell

objectors to file written statements of their objections with the clerk of court by a specified date

in advance of the hearing and to give notice if they intend to appear."  *Id*.  The notice must

"contain an adequate description of the proceedings written in objective, neutral terms, that,

insofar as possible, may be understood by the average absentee class member."  *In re Nissan

Motor Corp. Antitrust Litig*., 552 F.2d 1088, 1104 (5th Cir. 1977).  The notice must also "contain

information that a reasonable person would consider to be material in making an informed,

intelligent decision of whether to opt out or remain a member of the class and be bound by the final judgment." *Id*. at 1105.

The Notice here satisfies these requirements because it describes the nature, history, and status of the litigation; sets forth the definition of the Class; describes the Class as mandatory; states the claims and issues; says that Class members may enter an appearance through their own counsel; and advises of the binding effect of the Settlement approval proceedings on Class members. The Notice describes the Settlement; sets out the amount of attorneys' fees and expenses that Plaintiff's Counsel intends to seek in connection with final Settlement approval; provides contact information for Class counsel; and summarizes the reasons the parties are proposing the Settlement. The Notice also states the date, time, and place of the Settlement Hearing, and the procedures for commenting on the Settlement and appearing at the hearing. Because the Notice satisfies all applicable requirements, the Court should approve the proposed form and method of Notice to the Class.

### E.  Proposed Schedule of Events

In connection with the preliminary approval of Settlement, the parties request that the Court establish dates by which Notice of the Settlement will be sent to potential Class members and by which Class members may object to the Settlement, and set the final approval hearing date.[9] The following is a proposed schedule of events leading to the final approval hearing:

---

[9]     Additionally, in connection with the Settlement, TXI (or its successor(s) in interest and/or insurer(s)) has agreed to pay Plaintiff's Counsel's attorneys' fees and expenses, as awarded by the Court, in an amount not to exceed $360,000 (the "Fee Award"). The Fee Award was negotiated after all substantive terms of the Settlement were agreed to by the parties. Plaintiff will submit further briefing in support of approval of the Fee Award to the Court prior to the final Settlement Hearing.

| **EVENT** | **DATE** |
|---|---|
| Deadline for mailing the Notice to the Class | Within twenty (20) business days following entry of the Preliminary Order |
| Plaintiff's motion for final approval of the Settlement and application for an award of attorneys' fees and expenses ("Motion for Final Approval") | Twenty-one (21) calendar days prior to the final Settlement Hearing |
| Defendants' Counsel shall file with the Court an appropriate affidavit or declaration with respect to the preparation and mailing of the Notice to the Class | At least ten (10) business days prior to the final Settlement Hearing |
| Last day to file and serve objections to the Settlement and/or Plaintiff's application for attorneys' fees and expenses | Ten (10) calendar days prior to the final Settlement Hearing |
| Final Settlement Hearing and Hearing on Plaintiff's application for attorneys' fees | At the convenience of the Court, at least ninety (90) calendar days following Notice to the Class |

This schedule is similar to those used in numerous class action settlements and provides due process to the Class with respect to their rights concerning the Settlement.

## V.    CONCLUSION

Plaintiff respectfully requests that the Court enter the accompanying Preliminary Order, thereby preliminarily approving the Settlement, conditionally certifying the Class for settlement purposes, directing that Notice of the proposed Settlement be provided to the proposed Class, and setting a date for the final Settlement Hearing (and other applicable deadlines).

DATED:  January 22, 2015                    Respectfully submitted,

By: _/s/ Balon B. Bradley_
LAW OFFICES OF BALON B. BRADLEY

Balon B. Bradley
SBN # 02821700
5473 Blair Road, Suite 100
Dallas, TX  75231

18

(972) 991-1582

*Local Counsel for Plaintiff Maxine Phillips*


Juan E. Monteverde
FARUQI & FARUQI, LLP
369 Lexington Avenue, 10th Floor
New York, NY 10017
Tel.: 212-983-9330
Fax.: 212-983-9331

*Counsel for Plaintiff Maxine Phillips*