**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF TEXAS**
**DALLAS DIVISION**

| | |
|---|---|
| MAXINE PHILLIPS, Individually and on Behalf of All Others Similarly Situated,<br><br>     Plaintiff,<br><br>v.<br><br>TEXAS INDUSTRIES, INC., THOMAS R. RANSDELL, MEL G. BREKHUS, JOHN D. BAKER II, EUGENIO CLARIOND, SAM COATS, SEAN P. FOLEY, BERNARD LANIGAN, JR., THOMAS L. RYAN, RONALD G. STEINHART, DOROTHY C. WEAVER, MARTIN MARIETTA MATERIALS, INC., and PROJECT HOLDINGS, INC.<br><br>     Defendants. | Case No. 3:14-cv-00740-B |

## STIPULATION OF SETTLEMENT

IT IS HEREBY STIPULATED AND AGREED, by, between and among plaintiff stockholder Maxine Phillips, and defendants Texas Industries, Inc., Thomas R. Ransdell, Mel G. Brekhus, John D. Baker II, Eugenio Clariond, Sam Coats, Sean P. Foley, Bernard Lanigan, Jr., Thomas L. Ryan, Ronald G. Steinhart, Dorothy C. Weaver, Martin Marietta Materials, Inc., and Project Holdings, Inc., through their respective duly authorized counsel and pursuant to Rule 23 of the Federal Rules of Civil Procedure, that all matters and claims, known and unknown, that were or could have been asserted in the purported class action entitled *Phillips v. Texas Industries, Inc.*, Case No. 3:14-cv-00740-B are, subject to Court approval, settled, compromised,

satisfied, dismissed, and/or withdrawn with prejudice on the terms and conditions of this Agreement and the Releases contained in this Agreement.

## I.    DEFINITIONS

A.    As used in this Agreement, the following capitalized terms have the following meaning, unless a Section or Subsection of this Agreement provides otherwise:

1.    "Action" means the stockholder class action lawsuit captioned *Phillips* v. *Texas Industries, Inc.*, Case No. 3:14-cv-00740-B in the United States District Court for the Northern District of Texas, Dallas Division.

2.    "Agreement" means this Stipulation of Settlement and its Exhibits attached hereto, including any subsequent written amendments to the Stipulation of Settlement and/or to its Exhibits.

3.    "Amended Complaint" means the Amended Class Action Complaint filed by Plaintiff on March 18, 2014.

4.    "Approval Date" means the date on which the Court enters the Order Approving Settlement and Judgment.

5.    "Attorneys' Fees and Expenses Award" means the fees and expenses awarded by the Court to Plaintiff's Counsel (and any other counsel representing Plaintiff) as provided for in Section IV of this Agreement.

6.    "Award Payment Date" means the date by which TXI shall pay or cause to be paid the Attorneys' Fees and Expenses Award, which date shall be no later than ten (10) Business Days following the Court's entry of the Attorneys' Fees and Expenses Award either as part of the Order Approving Settlement and Judgment or through such other order as the Court may issue following the entry of the Order Approving Settlement and Judgment.

7.    "Board" means the Board of Directors of TXI.

8.    "Business Day" means a day other than a Saturday, Sunday, or Legal Holiday.

9.    "Calendar Day" means every day of the week, including Saturday, Sunday or Legal Holiday.

10.   "Claim" means any and all manner of claims, demands, rights, actions, causes of action, liabilities, damages, losses, obligations, judgments, amounts, duties, suits, costs, expenses, matters, and issues known or unknown, contingent or absolute, suspected or unsuspected, disclosed or undisclosed, liquidated or unliquidated, matured or unmatured, accrued or unaccrued, apparent or unapparent, including Unknown Claims that have been, could have been, or in the future can or might be asserted in any court, tribunal, or proceeding (including but not limited to any claims arising under federal, state, foreign, or common law, including the federal securities laws and any state disclosure law), whether individual, direct, class, derivative, representative, legal, equitable, or any other type or in any other capacity.

11.   "Class" means any and all persons or entities who held shares of TXI common stock, either of record or beneficially, at any time between March 25, 2013 and July 1, 2014, the date of the consummation of the acquisition transaction with Martin Marietta, including any and all of their respective successors in interest, predecessors, representatives, trustees, executors, administrators, heirs, assigns or transferees, immediate and remote, and any person or entity acting for or on behalf of, or claiming under any of them, other than the Defendants, their subsidiary companies, affiliates, assigns, and members of their immediate families, as the case may be.

12.   "Class Member" means a member of the Class.

13.   "Company" means TXI.

14.     "Company Counsel" means the law firm of Wachtell, Lipton, Rosen & Katz.

15.     "Complaint" means the Class Action Complaint filed by Plaintiff on February 25, 2014.

16.     "Complete Bar Order" means that portion of the Order Approving Settlement and Judgment, the text of which shall be substantially in the form as set out in paragraph 14 of Exhibit D, which the Settling Parties shall ask the Court to enter and which is an essential term of this Agreement.

17.     "Confirmatory Discovery Period" means the period following the execution of the MOU during which Plaintiff conducted confirmatory discovery.

18.     "Controlling Interest" means an interest in an entity where such interest is sufficient to allow the interest holder directly or indirectly to direct or control the direction of the management and policies of the entity, whether through ownership of voting shares, by contract, or otherwise.

19.     "Court" means the United States District Court for the Northern District of Texas, Dallas Division.

20.     "Defendants" mean the Company, the Individual Defendants, and Martin Marietta.

21.     "Exchange Act" means the Securities Exchange Act of 1934.

22.     "Execution Date" means the date by which this Agreement has been executed by all Settling Parties.

23.     "Fairness Hearing" means the hearing at or after which the Court shall make a decision (i) whether to approve this Agreement as fair, reasonable, and adequate and in

the best interest of the Company and its stockholders and (ii) whether to grant Plaintiff's Counsel's application for an Attorneys' Fees and Expenses Award.

24.   "Final" means, when used in connection with any Court judgment or order, that the judgment or order shall be Final:

a.   if no appeal is taken, on the date on which the time to appeal from, or seek rehearing or any other review of, the judgment or order (including any potential extension of time) has expired; or

b.   if any appeal is taken from the order and judgment, the date on which all appeals therefrom—including any petitions for rehearing en banc, petitions for certiorari, or any other form of review and any related appeals or petitions, including as to any appeal bond—have been finally disposed of, such that the time to appeal therefrom (including any potential extensions of time) has expired, in a manner resulting in an affirmance of the relevant judgment or order.

25.   "Final Settlement Date" means the date on which the Order Approving Settlement and Judgment in this Action becomes Final.

26.   "Individual Defendants" means Thomas R. Ransdell, Mel G. Brekhus, John D. Baker II, Eugenio Clariond, Sam Coats, Sean P. Foley, Bernard Lanigan, Jr., Thomas L. Ryan, Ronald G. Steinhart, and Dorothy C. Weaver.

27.   "Individual Defendants' Counsel" means the law firm of Wachtell, Lipton, Rosen & Katz.

28.    "Legal Holiday" means New Year's Day, the observance of the Birthday of Martin Luther King, Jr., Presidents' Day, Memorial Day, Independence Day, Labor Day,

Columbus Day, Veterans Day, Thanksgiving Day, Christmas Day, and any other day designated as a federal or Texas state holiday.

29.　"Martin Marietta" means, collectively, Martin Marietta Materials, Inc. and Project Holdings, Inc.

30.　"Martin Marietta Counsel" means the law firm of Cravath, Swaine & Moore LLP.

31.　"Merger Agreement" means the agreement and plan of merger announced by TXI and Martin Marietta on January 28, 2013, pursuant to which the Transaction was effected.

32.　"MOU" means the Memorandum of Understanding entered into by the Parties on June 10, 2014.

33.　"Notice" means the notice described in Section III.C of this Agreement, as approved by the Court, which notice shall be substantially in the form as set out in Exhibit C.

34.　"Notice and Administrative Expenses" means all expenses associated with administration of this Settlement, including the fees and expenses associated with publishing the Notice; provided however, that Notice and Administrative Expenses shall not include the Attorneys' Fees and Expenses Award.

35.　"Objection Date" means the date by which objections to the Settlement proposed in this Agreement must be filed with the Court and served on counsel as set out in the Preliminary Approval Order.

36.　"Order Approving Settlement and Judgment" means the order and final judgment to be entered by the Court approving the settlement and this Agreement and

dismissing the Action as contemplated in Section VII of this Agreement, which order and judgment shall be substantially in the form as set out in Exhibit D.

37.    "Plaintiff" means Maxine Phillips.

38.    "Plaintiff's Counsel" means the law firm of Faruqi & Faruqi, LLP.

39.    "Preliminary Approval Date" means the date on which the Court enters the Preliminary Approval Order.

40.    "Preliminary Approval Order" means the order to be entered by the Court concerning notice, administration and the Fairness Hearing, as contemplated in Section VI of this Agreement, which order shall be substantially in the form as set out in Exhibit B.

41.     "Releases" means the releases set forth in Section III.F of this Agreement.

42.    "Released Defendants' Claims" means all claims, penalties, allegations or sanctions (including Unknown Claims) arising out of, relating to, or in connection with, the institution, prosecution, assertion, settlement or resolution of the Action or the Released Claims.

43.    "Released Claims" means any and all manner of claims, demands, rights, actions, causes of action, liabilities, damages, losses, obligations, judgments, amounts, duties, suits, costs, expenses, matters, and issues known or unknown, contingent or absolute, suspected or unsuspected, disclosed or undisclosed, liquidated or unliquidated, matured or unmatured, accrued or unaccrued, apparent or unapparent (including, but not limited to, all claims for damages whether compensatory, special, incidental, consequential, punitive, exemplary or otherwise interest, attorneys' fees and expert consulting fees and all other costs, expenses and liabilities whatsoever), including Unknown Claims that have been, could have been, or in the future can or might be asserted in any court, tribunal, or proceeding (including but not limited to any claims arising under federal, state, foreign, or common law, including the federal securities

laws and any state disclosure law), by or on behalf of any Releasor, whether individual, direct, class, derivative, representative, legal, equitable, or any other type or in any other capacity against any Releasee which have arisen, could have arisen, arise now, or hereafter may arise out of or relate in any manner to the allegations, facts, events, transactions, acts, occurrences, statements, representations, misrepresentations, omissions or any other matter, thing, or cause whatsoever, or any series thereof, embraced, involved, set forth or otherwise related to the Action, the Transaction, the negotiation or consideration of the Transaction or any agreements or disclosures relating thereto, the Merger Agreement, or any preliminary or definitive joint proxy statement filed or distributed to stockholders in connection with the Transaction including without limitation any disclosures, non-disclosures or public statements made in connection with any of the foregoing; provided, however, that the Released Claims shall not include any claims to enforce the Settlement.

44.    "Releasee" means each and every one of, and "Releasees" mean all of, Defendants (or any Defendant), or any of their respective families, parent entities, controlling persons, associates, predecessors, successors, affiliates, or subsidiaries, and each and all of their respective past or present officers, directors, executives, stockholders, principals, representatives, employees, attorneys, financial or investment advisors, consultants, accountants, auditors, investment bankers, commercial bankers, entities providing fairness opinions, underwriters, brokers, dealers, insurers, advisors or agents, heirs, executors, trustees, general or limited partners or partnerships, limited liability companies, members, managers, joint ventures, personal or legal representatives, estates, administrators, predecessors, successors, and assigns.

45.     "Releasor" means each and every one of, and "Releasors" means all of, (i) Plaintiff and all other Class Members, (ii) Plaintiff's and all other Class Members' parents, predecessors, successors, current and former Affiliates, divisions, business units, joint ventures (regardless of percentage of interest), subsidiaries and assigns, and all other entities in which any of them has or had a Controlling Interest or that has or had a Controlling Interest in any of them, (iii) past and present officers, directors, employees, officials, members, partners, principals, agents, representatives, attorneys (including any and all in-house and outside counsel, including, without limitation, Plaintiff's Counsel), advisors, administrators, auditors (including any and all internal and external auditors), accountants, consultants, service providers, successors-in-interest and insurance carriers or any or all of the foregoing, and (iv) any other person or entity (including any governmental entity) claiming by or through, on behalf of, for the benefit of, derivatively for, or as representative of any other Releasor or the Company; provided that respecting any Releasor who is a person, "Releasor" shall also mean each and all of such Releasor's respective estates, heirs, executors, beneficiaries, trusts, trustees and assigns.

46.      "SEC" means the Securities and Exchange Commission.

47.     "Settlement" means the settlement terms, conditions, and other provisions that are memorialized in this Agreement.

48.     "Settling Parties" means TXI, Martin Marietta, Plaintiff, and the Individual Defendants.

49.     "Supplemental Disclosures" means the supplemental disclosures filed by TXI and Martin Marietta on Form 8-K with the SEC on June 11, 2014, attached as Exhibit A hereto.

50.    "Termination Date" means that date on which any of the Settling Parties provides notice that he, she or it is exercising a right to terminate this Agreement under Section IX of this Agreement.

51.    "Transaction" means Martin Marietta's acquisition of TXI by way of a merger in which holders of TXI common stock received 0.700 Martin Marietta shares for each share of TXI common stock.

52.    "TXI" means Texas Industries, Inc.

53.    "Unknown Claim" means any claim that a Releasor does not know or suspect exists in his, her, or its favor at the time of the release of the Released Company/Class Claims as against the Releasees, including without limitation those which, if known, might have affected the decision to enter into the Settlement and any claim that a Releasor does not know or suspect exists in his, her, or its favor at the time of the release of the Defendants' Released Claims as against the Releasors, including without limitation those which, if known, might have affected the decision to enter into the Settlement. This shall include a waiver of any rights pursuant to § 1542 of the California Civil Code (or any similar, comparable or equivalent provision) which provides:

> A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS WHICH THE CREDITOR DOES NOT KNOW OR SUSPECT TO EXIST IN HIS OR HER FAVOR AT THE TIME OF EXECUTING THE RELEASE, WHICH IF KNOWN BY HIM OR HER MUST HAVE MATERIALLY AFFECTED HIS OR HER SETTLEMENT WITH THE DEBTOR.

The Releasors acknowledge that members of the Class and/or other TXI stockholders may discover facts in addition to or different from those that they now know or believe to be true with respect to the subject matter of this release, but that it is their intention, as Plaintiff and on behalf of the Class, to fully, finally, and forever settle and release any and all claims released hereby

known or unknown, suspected or unsuspected, which now exist, or heretofore existed, or may hereafter exist, and without regard to the subsequent discovery or existence of such additional or different facts. Plaintiff and the other undersigned parties acknowledge, and the members of the Class by operation of law shall be deemed to have acknowledged, that the inclusion of Unknown Claims in the definition of Released Claims was separately bargained for, constitutes separate consideration for, and was a key element of the Settlement and was relied upon by each and all of the Defendants in entering into the Stipulation.

      B.     Capitalized terms used in this Agreement but not defined above shall have the meanings ascribed to them in this Agreement.

## II.     BACKGROUND

      A.     The Action

      1.     On January 28, 2014, TXI and Martin Marietta announced that their respective boards of directors had unanimously approved an agreement and plan of merger pursuant to which Martin Marietta would acquire TXI by way of a merger in which holders of TXI common stock would receive 0.700 Martin Marietta shares for each share of TXI common stock.

      2.     On February 25, 2014, the Action was filed, alleging that the Director Defendants breached their fiduciary duties to TXI's stockholders in connection with the Transaction and that TXI and Martin Marietta aided and abetted those breaches, and seeking, among other things, an order enjoining the Transaction.

      3.     On March 3, 2014, Martin Marietta filed a Form S-4 registration statement containing a preliminary joint proxy statement/prospectus with the SEC.

4.      On March 18, 2014, the Plaintiff filed the Amended Complaint, which added additional claims alleging material omissions in the Preliminary Proxy Statement/Prospectus.

5.      On April 19, 2014, the Plaintiff sought expedited discovery from Defendants, and following discussions, the Defendants ultimately agreed to provide certain expedited discovery to the Plaintiff.

6.      On May 1, 2014, Martin Marietta filed an amended Form S-4 registration statement containing a preliminary joint proxy statement/prospectus with the SEC containing certain additional disclosures.

7.      On May 21, 2014, Martin Marietta filed a second amended Form S-4 registration statement containing a preliminary joint proxy statement/prospectus with the SEC containing, among other things, certain additional disclosures.

8.      On May 30, 2014, Martin Marietta and TXI filed a definitive joint proxy statement in connection with the Merger on Form 424B3 and Schedule 14A, respectively, with the Securities and Exchange Commission containing, among other things, certain additional disclosures sought by Plaintiff.

9.      Defendants and Plaintiff thereafter engaged in arm's-length discussions and negotiations regarding a potential resolution of the claims asserted in the Action. In connection with such discussions and negotiations, Plaintiff proposed to Defendants various additional disclosures and potential amendments to the Merger Agreement that Plaintiff believed should have been made originally in connection with the proposed transaction. Following arm's-length negotiations, Defendants agreed, in order to settle the Action, to provide the Supplemental Disclosures.

10.    On June 10, 2014, the Parties reached an agreement in principle, the substantive terms of which were memorialized in the MOU, providing for settlement of the Action, subject to confirmatory discovery that has now been completed.

11.    On June 11, 2014, in accordance with the MOU, Defendants filed with the SEC the Supplemental Disclosures. Without in any way admitting or conceding that any additional disclosures are or may have been material or required, Defendants acknowledge that the filing of the Action and negotiations with Plaintiff in connection with a potential settlement of the Action were the sole cause of the Supplemental Disclosures.

12.    At a special meeting of the stockholders of TXI and Martin Marietta to vote on the Transaction and approve the Merger Agreement on June 30, 2014 a requisite number of TXI and Martin Marietta stockholders voted to approve the Transaction and the Merger Agreement.

13.    Defendants have vigorously denied and continue to deny all allegations of wrongdoing, fault, liability, or damage to Plaintiff, deny that they have engaged in any wrongdoing whatsoever, deny that they have committed any violation of law, deny that they have breached any fiduciary duty, deny that any disclosures in connection with the proposed transaction (including without limitation those in the Form S-4,Form S-4/A, Form 424B3, and Schedule 14A) are or at any time have been in any way deficient, deny that they acted improperly in any way, believe that they acted properly at all times, believe that the Action has no merit, and maintain that they have committed no disclosure violations or any other breach of duty whatsoever in connection with the Transaction or any public disclosures relating thereto, but have determined to enter into a settlement for the reasons set forth herein.

14.     Plaintiff determined to enter into the MOU because, in her opinion, the Supplemental Disclosures provided additional material information about the sale process, though entry by Plaintiff into the MOU was not an admission by her as to the lack of any merit of any claims asserted in the Action. The Parties also recognized the time and expense that would be incurred by further litigation and the uncertainties inherent in such litigation.

15.     Plaintiff conducted confirmatory discovery that included the review of additional paper discovery, including board minutes for TXI, regarding the proposed transaction as well as an in depth interview of the Chairman of the Board, Defendant Thomas R. Ransdell, in the presence of counsel for Defendants.

16.     After completing confirmatory discovery, the Parties confirmed their agreement for settlement of the Action on the terms and conditions set forth in the MOU and herein, including but not limited to, a release of all claims relating to the proposed transaction or which were or could have been asserted in the Action.

## III.     TERMS AND CONDITIONS OF THE SETTLEMENT

A.     Settlement Relief

The Board has publicly filed and implemented the Supplemental Disclosures as reflected in Exhibit A hereto.

B.     Certification of the Class for Settlement Purposes Only

1.     For purposes of the Settlement only, the Action shall be provisionally certified as a non-opt-out class action pursuant to Fed. R. Civ. P. 23 on behalf of the Class.

C.     Notice to Class Members and Other Communications with Class Members

1.     Notice

a.     Within twenty business days following the entry of the Court's Preliminary Approval Order, TXI or its successor(s)-in-interest shall be responsible for the

causing of the distribution of the Court approved Notice to the Class Members in the form and manner pursuant to the Preliminary Approval Order. It is contemplated by the parties that the Notice will be made using U.S. Postal Service, postage pre-paid. TXI or its successor(s)-in-interest shall be responsible for payment of the printing and distribution costs of the Notice, and shall pay, or cause their respective insurers to pay, all reasonable costs and expenses in connection therewith.

        b.      A copy of the Notice, substantially in the form as set out in Exhibit C, shall be submitted to the Court for approval at the time the Settling Parties submit this Agreement to the Court.

        2.      Direct Communications with Class Members

        a.      The Company and Martin Marietta each expressly reserve the right to communicate with and respond to inquiries by Class Members with respect to matters unrelated to this Agreement.

        b.      The Company and Martin Marietta may communicate with Class Members regarding the Settlement as they deem necessary or appropriate, including telephone communications.

        3.      Other Communications

        a.      The Settling Parties, Plaintiff's Counsel, Company Counsel, Individual Defendants' Counsel, and Martin Marietta Counsel agree to cooperate in good faith to ensure that (i) any comments about or descriptions regarding the proposed Settlement that are made in the media or any other public forum are accurate and (ii) any press release regarding the proposed Settlement shall be circulated in advance for review and comment by all Settling

Parties, Plaintiff's Counsel, Company Counsel, Individual Defendants' Counsel, and Martin Marietta Counsel.

     b. Notwithstanding this Section III.C.3, nothing shall prevent the Company from making any and all disclosures regarding the proposed Settlement it believes may be required or appropriate, including disclosures to regulators, stock exchanges, analysts, attorneys, accountants, and insurance carriers, without notification to or prior review of the other Settling Parties or Plaintiff's Counsel.

   D. Notice and Administrative Expenses

    TXI and/or its successors or insurers shall be responsible for the payment of all Notice and Administrative Expenses.

   E. Certain Benefits to the Class

    1. In consideration for the full and final settlement and release of all Released Claims and the dismissal with prejudice and on the merits of the Action on the terms provided for herein, the Defendants agreed to the Supplemental Disclosures issued on June 11, 2014.

   F. Releases and Waivers, and Order of Dismissal

    1. Releases and Waivers

     a. Pursuant to the Order Approving Settlement and Judgment, without further action by anyone, and subject to Sections III.F.l.c and III.F.l.d, on and after the Final Settlement Date, Plaintiff, all other Class Members, and the Company, on behalf of themselves and all other Releasors, shall be deemed to have, and by operation of law and of the Order Approving Settlement and Judgment shall have fully, finally, and forever released,

relinquished, settled, and discharged all Released Claims against each and every one of the Releasees;

    b.  Pursuant to the Order Approving Settlement and Judgment, without further action by anyone, and subject to Sections III.F.1.c and III.F.1.d, on and after the Final Settlement Date, Defendants, for good and sufficient consideration, the receipt and adequacy of which are hereby acknowledged, shall be deemed to have, and by operation of law and of the Order Approving Settlement and Judgment shall have fully, finally, and forever released, relinquished, settled, and discharged Plaintiff and Plaintiff's Counsel from any and all Released Defendants' Claims.

    c.  Notwithstanding any other provision of this Section III, nothing in the Order Approving Settlement and Judgment shall bar any Claim

    (1)  by any of the Settling Parties, Plaintiff's Counsel, Martin Marietta Counsel, Company Counsel, and Individual Defendants' Counsel to enforce the terms of this Agreement or the Order Approving Settlement and Judgment;

    (2)  belonging to the Company, the Individual Defendants or Martin Marietta against any of its insurers arising out of or relating to insurance, indemnification or advancement obligations, the Company's and Martin Marietta's certificate of incorporation, their bylaws, insurance contracts, or other agreements relating to indemnification, advancement or insurance; and

    d.  Notwithstanding any other provision of this Section III.F or of the Agreement, nothing in the Preliminary Approval Order, or the Order Approving Settlement and Judgment shall bar any Releasee or the Company from asserting any defense or any claim

against any non-Releasee in any pending or future judicial, administrative, regulatory, arbitration, or other proceeding other than the Action.

e. The releases and waivers in this Section III.F were separately bargained for and are essential elements of this Agreement.

2. Order Approving Settlement and Judgment

a. The Settling Parties shall obtain from the Court an Order Approving Settlement and Judgment as further described in Section VII below.

## IV. ATTORNEYS' FEES AND EXPENSES

A. Plaintiff's Counsel shall seek Court approval for attorneys' fees and expenses in an amount not to exceed three hundred sixty thousand dollars ($360,000).

B. TXI, through its Board, has agreed that it, and/or its successors or insurers, will pay or cause to be paid three hundred sixty thousand dollars ($360,000) for Plaintiff's Counsel's attorneys' fees and expenses or such lesser amount as approved by the Court provided, however, that Plaintiff's obligation to consummate the Agreement is not conditioned on the amount of the Attorneys' Fees and Expenses Award approved by the Court, and Plaintiff cannot refuse to consummate the Agreement because the Court rejects or modifies in any way the Attorneys' Fees and Expenses Award in the attached Preliminary Approval Order and Order Approving Settlement and Judgment.

C. TXI and/or its successors or insurers shall pay or cause to be paid the Attorneys' Fees and Expenses Award (not to exceed the amount described in Section IV.A.) by the Award Payment Date subject to the following conditions:

1. The Attorneys' Fees and Expenses Award shall be paid to Faruqi & Faruqi, LLP, pursuant to instructions provided by that firm, which shall be provided to TXI within one (1) Business Day following the Approval Date.

2.      Plaintiff's Counsel shall have sole responsibility for the allocation of the Attorneys' Fees and Expenses Award to any other counsel representing Plaintiff, or any other counsel asserting a right to receive a portion of the Attorneys' Fees and Expenses Award; neither TXI nor the Individual Defendants nor Martin Marietta nor any of their insurers shall have any responsibility whatsoever with respect to the allocation of the Attorneys' Fees and Expenses Award to Plaintiff's Counsel, any other counsel representing Plaintiff, or any other counsel asserting a right to receive a portion of the Attorneys' Fees and Expenses Award.

3.      If, after payment of the Attorneys' Fees and Expenses Award pursuant to Section IV.C, (i) the Attorneys' Fees and Expenses Award is vacated or (ii) this Agreement is properly and timely terminated in accordance with its terms, Plaintiff's Counsel shall, within ten (10) Business Days following such termination, return to TXI and/or its successors or insurers, as the case may be, the Attorneys' Fees and Expenses Award that any Plaintiff's Counsel received out of the Attorneys' Fees and Expenses Award.

4.      If, after payment of the Attorneys' Fees and Expenses Award pursuant to Section IV.C, the Attorneys' Fees and Expenses Award is reduced, Plaintiff's Counsel shall, within ten (10) Business Days following such reduction, return to TXI and/or its successors or insurers, as the case may be, the amount by which the Attorneys' Fees and Expenses Award has been reduced.

5.      As a condition of receiving the Attorneys' Fees and Expenses Award, Plaintiff's Counsel agrees that it is subject to the jurisdiction of the Court for purposes of enforcing this Section IV.C.

D.      Neither any Releasee nor the Company nor the Individual Defendants nor Martin Marietta nor any of their insurers shall be liable for or obligated to pay any fees, expenses, costs,

or disbursements to, or incur any expense on behalf of, any person or entity (including, without limitation, Plaintiff and Plaintiff's Counsel) directly or indirectly, in connection with the Action or this Agreement except as expressly provided for in this Agreement. By paying the Attorneys' Fees and Expenses Award, TXI, its successor and/or assigns, and/or their insurer(s), and/or the insurer(s) of the individual defendants fully and finally extinguish Defendants' liability for any and all attorneys' fees, expenses, or other costs in connection with the Action, and, except as provided herein, Defendants shall bear no other expenses, costs, damages or fees alleged or incurred by Plaintiff, by any Class Member, or by any of their attorneys, experts, advisors, agents, or representatives with respect to the Released Claims.

## V.     OBJECTIONS BY CLASS MEMBERS

A.     Any Class Member who wishes to object to the fairness, reasonableness, or adequacy of this Agreement, to any term(s) of this Agreement or to the proposed Attorneys' Fees and Expenses Award may do so subject to the requirements set out in the Preliminary Approval Order.

## VI.    PRELIMINARY APPROVAL HEARING AND PRELIMINARY APPROVAL ORDER

A.     Within ten (10) Business Days following the Execution Date, the Settling Parties shall jointly apply to the Court for entry of a Preliminary Approval Order, substantially in the form as set out in Exhibit B.

## VII.   FAIRNESS HEARING, ORDER APPROVING SETTLEMENT AND JUDGMENT AND DISMISSAL

A.     The Settling Parties shall request that the Court schedule a Fairness Hearing at which to consider whether (i) to approve this Agreement as fair, reasonable, and adequate and in the best interest of the Company and its stockholders and (ii) to approve Plaintiff's Counsel's request for an Attorneys' Fees and Expenses Award.

B.      If the Court approves the Agreement, the Settling Parties shall jointly ask the Court to enter an Order Approving Settlement and Judgment substantially in the form attached as Exhibit D.

C.      If any terms of the Complete Bar Order entered by the Court is held to be unenforceable after the date of entry, such provision shall be substituted with such other provision as may be necessary to afford each of the Releasees the fullest protection permitted by law from any Claim that is based upon, arises out of, or relates to any Released Claim.

## VIII.   NO ADMISSIONS

A.      This Agreement, the offer of this Agreement, and implementation of and compliance with this Agreement shall not constitute or be construed as an admission by any or all of the Releasees of any wrongdoing or liability. This Agreement is to be construed solely as a reflection of the Settling Parties' desire to facilitate a resolution of the Claims in the Complaint and of the Released Claims.

B.      The Settling Parties agree that no party was or is a "prevailing party." In no event shall this Agreement, any of its provisions, or any negotiations, statements, or court proceedings relating to its provisions in any way be construed as, offered as, received as, used as, or deemed to be evidence of any kind in the Action, any other action, or any judicial, administrative, regulatory, or other proceeding, except a proceeding to enforce this Agreement.

C.      Without limiting any of the foregoing provisions in this Section VIII, neither this Agreement nor any related negotiations, statements, or court proceedings shall be construed as, offered as, received as, used as, or deemed to be evidence of an admission or concession of any liability or wrongdoing whatsoever on the part of any person or entity, including, but not limited to, the Company, or as a waiver by the Company or the Individual Defendants of any applicable defense.

## IX.    MODIFICATION OR TERMINATION OF THIS AGREEMENT

A.    The terms and provisions of this Agreement may be amended, modified, or expanded by written agreement of the Settling Parties; provided however, that after entry of the Order Approving Settlement and Judgment, the Settling Parties may by agreement effect such amendments, modifications, or expansions of this Agreement and its implementing documents without notice to or approval by the Court if such amendments, modifications, or expansions are not materially inconsistent with the Court's Order Approving Settlement and Judgment and do not limit the rights of Plaintiff, any other Class Member, the Company, Martin Marietta, the Individual Defendants, Releasors, or Releasees under this Agreement.

B.    Subject to Sections IX.D, IX.E and IX.F, this Agreement shall terminate at the sole option and discretion of the Company, Martin Marietta, the Individual Defendants, or Plaintiff if (i) the Court, or any appellate court, rejects, modifies, or denies approval of any portion of the Agreement or the proposed Settlement that the terminating Settling Party(ies) reasonably and in good faith determines is material, including, without limitation, the Complete Bar Order, the findings of the Court, the provisions relating to Notice, and/or the terms of the Releases or (ii) the Court, or any appellate court, does not enter or completely affirm, or alters, or expands, any portion of the Preliminary Approval Order or the Order Approving Settlement and Judgment, including the Complete Bar Order and/or the Releases, that the terminating Settling Party(ies) reasonably and in good faith believes is material or (iii) any Claim related to the subject matter of the Action, the Transaction, or the Released Claims is commenced or prosecuted against any of the Releasees in any court prior to Final approval of the Settlement, and (following a motion by any Defendant) any such claim is not dismissed with prejudice.

C.      The relevant terminating Settling Party must exercise an option to terminate this Agreement by providing notice to all other Settling Parties no later than thirty (30) days after receiving actual notice of the event prompting the termination.

D.      Notwithstanding anything set out in this Section IX, Plaintiff, any other Class Member, or Plaintiff's Counsel may not terminate this Agreement because of the amount of the Attorneys' Fees and Expenses Award.

E.      If an option to terminate this Agreement arises under this Section IX, (i) none of the Company, Martin Marietta, Plaintiff, or Individual Defendants shall be required for any reason or for any circumstance to exercise that option and (ii) any determination to exercise an option to terminate shall be made in good faith.

F.      If this Agreement is terminated pursuant to its terms, then:

1.      this Agreement shall be null and void and shall have no force or effect, and no Settling Party or Releasee shall be bound by any of its terms except for the terms set out in Sections IV.C.4 and IX.F.2 through IX.F.9;

2.      this Agreement, all of its provisions, and all negotiations, statements, and proceedings relating to it shall be without prejudice to the rights of the Settling Parties or any other Class Member, all of whom shall be restored to their respective positions existing immediately before the Execution Date, except with respect to the payment of Notice and Administrative Expenses as described in Section III.D above;

3.      Releasees (including without limitation the Company, Martin Marietta, and the Individual Defendants) expressly deny any wrongdoing and expressly and affirmatively reserve all defenses, arguments, and motions that have been or might later be asserted in the Action;

4.     Neither this Agreement, nor the fact of its having been made, shall be admissible or entered into evidence in any proceeding for any purpose whatsoever, except to enforce its terms; however, in the event this Settlement is not approved, Plaintiff reserves the right to apply to the Court for a mootness fee application as a result of the June 11, 2014 Supplemental Disclosures having been made prior to the stockholder vote, which Defendants reserve the right to oppose.

5.     Neither TXI's agreement to the terms set out in this Agreement nor its execution of this Agreement shall constitute or be construed to be an admission by TXI that any wrongdoing has taken place, that any of the Individual Defendants (or any other Releasee) has engaged in a breach of his or her fiduciary duties, or engaged in any other actionable conduct in connection with the conduct alleged in the Amended Complaint, or that any of the Claims made in the Action have any merit, or are in the best interest of the Company or its stockholders to pursue;

6.     Neither the Individual Defendants' agreement to the terms set out in this Agreement nor their execution of this Agreement shall constitute or be construed to be an admission by the Individual Defendants collectively or individually that any of the Individual Defendants has engaged in a breach of his or her fiduciary duties, a violation of the federal securities laws, or engaged in any wrongdoing or other actionable conduct in connection with the conduct alleged in the Amended Complaint or that any of the Claims made in the Action have any merit;

7.     Neither Martin Marietta's agreement to the terms set out in this Agreement nor its execution of this Agreement shall constitute or be construed to be an admission by Martin Marietta collectively or individually that Martin Marietta has engaged in a

breach of its fiduciary duties, a violation of the federal securities laws, or engaged in any other actionable conduct in connection with the conduct alleged in the Amended Complaint or that any of the Claims made in the Action have any merit;

        8.     The Company, and/or its successors, shall, consistent with Section III.D above, pay all Notice and Administrative Expenses incurred but not paid as of the Termination Date; and

        9.     Except as expressly set out in the Agreement in Sections III.D, IV.C.4, and IX.F.8, nothing in this Agreement shall create any obligation on the part of any Settling Party to pay any other Settling Party's fees and/or expenses.

## X.      GENERAL MATTERS AND RESERVATIONS

      A.     The obligations of the Settling Parties to consummate the Agreement are conditioned upon the occurrence of each of the following:

        1.     entry by the Court of the Preliminary Approval Order in substantially the form attached as Exhibit B, with changes only as approved by the Settling Parties;

        2.     entry by the Court of the Order Approving Settlement and Judgment in substantially the form attached as Exhibit D, with changes only as approved by the Settling Parties; and

        3.     the Final Settlement Date.

      B.     The Settling Parties intend this Agreement to be a final and complete resolution of all Claims arising out of Released Claims that have been or could have been asserted by any Class Member directly or derivatively or by the Company directly against Releasees or any of them. The Settling Parties agree not to assert in any forum that the Action was brought (on the one hand) or that the Company, Martin Marietta, or the Individual Defendants defended the Action (on the other hand) in bad faith or without a reasonable basis.  The Settling Parties shall

not assert any Claims relating to the prosecution, defense, or settlement of the Action except as necessary to enforce this Agreement. The Settling Parties agree that the settlement  relief provided in the Agreement and the terms of this Agreement were negotiated at arm's-length, in good faith by the Settling Parties, and reflect a Settlement that was reached voluntarily after consultation with experienced counsel.

C.       Plaintiff and her counsel represent and warrant that Plaintiff was a shareholder of TXI at all relevant times, and that none of Plaintiff's claims or causes of action referred to in the Amended Complaint in the Action, the MOU or this Stipulation have been assigned, encumbered or in any manner transferred in whole or in part.

D.       This Agreement sets forth the entire agreement among the Settling Parties with respect to its subject matter and supersedes the agreement in principle that preceded this Agreement. This Agreement may not be altered or modified except by written instrument executed by Plaintiff's Counsel (with the permission of Plaintiff), Company Counsel (with the permission of TXI), Individual Defendants' Counsel (with the permission of the Individual Defendants), and Martin Marietta Counsel (with the permission of Martin Marietta). This Stipulation may be executed in counterparts by facsimile, electronic, or original signature by any of the signatories hereto and as so executed shall constitute one agreement. The Settling Parties expressly acknowledge that no other agreements, arrangements, or understandings not expressed in this Agreement exist among or between them. This Stipulation replaces the MOU, which shall be of no further force or effect upon execution of this Stipulation. In entering into this Agreement, no Settling Party has relied upon any representation or warranty not set forth expressly in this Agreement.

E.      This Agreement shall be governed by and interpreted according to the laws of the state of Texas, excluding its conflict of laws provision.

F.      Except as set out in Section III.E above, the Court retains continuing and exclusive jurisdiction over this Agreement, the Settling Parties, all Class Members (including all Class Members who submit objections pursuant to Section V), all Releasors, and all Releasees to adjudicate all issues relating to this Agreement, including without limitation, any issues relating to the Preliminary Approval Order or the Order Approving Settlement and Judgment. Subject to Section III.E, any action arising under or to enforce this Agreement, the Preliminary Approval Order, or the Order Approving Settlement and Judgment shall be commenced and maintained only in the Court. Each of the Parties expressly waives, and agrees not to plead or to make any claim that any such action or proceeding is subject (in whole or in part) to a jury trial. Each of the Parties further agrees to waive any bond, surety or other security that might be required of any other party with respect to any action or proceeding, including an appeal thereof.

G.      Whenever this Agreement requires or contemplates that a Settling Party shall or may give notice to another Settling Party or to counsel, notice shall be provided by e-mail, facsimile, and/or overnight (excluding Saturday and Sunday) delivery service as follows and shall be deemed effective upon receipt of such e-mail, facsimile transmission, or delivery to the e-mail, facsimile number, or address, as the case may be, below:

1.      If to TXI or the Individual Defendants, then to:

> Rachelle Silverberg
> Wachtell, Lipton, Rosen & Katz
> 51 West 52nd Street
> New York, NY  10019
> Telephone: (212) 403-1000
> rsilverberg@wlrk.com

2.      If to Martin Marietta, then to:

Sandra C. Goldstein
Cravath, Swaine & Moore LLP
825 8th Avenue
New York, NY  10019
Telephone: (212) 474-1000
sgoldstein@cravath.com

3.     If to Plaintiff, then to:

Juan E. Monteverde
Faruqi & Faruqi, LLP
369 Lexington Avenue
10th Floor
New York, NY 10017
Telephone: (212) 983-9330
Facsimile: (212) 983-9331
jmonteverde@faruqilaw.com

H.     All time periods set forth in this Agreement shall be computed in Calendar Days unless otherwise expressly provided. In computing any period of time prescribed or allowed by a court, the day, event, or default from which the designated period of time begins to run shall not be included. The last day of the period so computed shall be included, unless it is a Saturday, a Sunday, or a Legal Holiday, or, when the act to be done is the filing of a paper in the Court, a day on which weather or other conditions have caused the office of the Clerk of the Court to be inaccessible, in which event the period shall run until the end of the next day that is not one of the aforementioned days.

I.      The Settling Parties reserve the right, subject to the Court's approval, mutually to agree to any reasonable extensions of time that might be necessary to carry out any of the provisions of this Agreement.

J.      The Settling Parties, their successors and assigns, and their counsel undertake to implement this Agreement, to cooperate fully in seeking Court approval and to use all reasonable efforts to effect the prompt consummation of this Agreement and the proposed Settlement.

K.      The Settling Parties shall request that the Court stay all proceedings in the Action, except for those proceedings related to the Settlement, until the resolution of all Settlement-related proceedings. If any Released Claims are brought against any Releasees and not dismissed with prejudice or stayed in contemplation of the dismissal of the Action, any Releasee may (but is not obligated to) render this Stipulation null and void.

L.      This Agreement may be signed in counterparts, each of which shall constitute a duplicate original. Execution by facsimile or by electronically transmitted signature shall be fully and legally binding on a Settling Party.

M.      All Releasees who are not Settling Parties are intended third-party beneficiaries who are entitled to enforce the terms of the Release.

Agreed to as of this 22nd day of January, 2015.


*OF COUNSEL:*

Juan E. Monteverde
FARUQI & FARUQI, LLP
369 Lexington Ave., 10th Floor
New York, NY  10017
(212) 983-9330

LAW OFFICES OF BALON B. BRADLEY

/s/ Balon B. Bradley
Balon B. Bradley
SBN # 02821700
5473 Blair Road, Suite 100
Dallas, TX  75231
(972) 991-1582

*Counsel for Plaintiff*

FULBRIGHT & JAWORSKI LLP

*OF COUNSEL:*

/s/ Michael A. Swartzendruber

Rachelle Silverberg
WACHTELL, LIPTON, ROSEN & KATZ
51 West 52nd Street
New York, NY  10019
(212) 403-1000

Michael A. Swartzendruber
SBN # 19557702
2200 Ross Avenue
Suite 2800
Dallas, TX  75201
(214) 855-8000

*Counsel for Defendants TXI, Thomas R. Ransdell, Mel G. Brekhus, John D. Baker II, Eugenio Clariond, Sam Coats, Sean P. Foley, Bernard Lanigan, Jr., Thomas L. Ryan, Ronald G Steinhardt, and Dorothy C. Weaver*

CARRINGTON, COLEMAN, SLOMAN & BLUMENTHAL, L.L.P.

*OF COUNSEL:*
Sandra C. Goldstein
CRAVATH, SWAINE & MOORE LLP
825 8th Avenue
New York, NY  10019
(212) 474-1000

Bruce W. Collins
SBN # 04604700
Monica W. Latin
SBN # 00787881
901 Main Street
Suite 5500
Dallas, TX  75202
(214) 855-3000

*Counsel for Martin Marietta*